**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**STEVEN HAIGLER,**

    **Plaintiff,**

v.                                                                          Case No.  8:04-cv-851-T-30EAJ

**CIGNA CORPORATION, et al.,**

    **Defendants.**
_____/

**ORDER**

THIS CAUSE comes before the Court upon Defendants' Motion for Summary Judgment in Part and to Dismiss in Part (Dkt. 48), Plaintiff's response thereto (Dkt. 64), Defendants' Reply Memorandum (Dkt. 75), Plaintiff's response to Defendants' Reply Memorandum (Dkt. 78), Plaintiff's Dispositive Cross Motion for Summary Judgment on his Third Claim for Relief (Dkt. 87), Defendants' response thereto (Dkt. 91) and hearing on the same. For the reasons set forth below, the Court agrees with Defendants and finds that Defendants' Motion for Summary Judgment should be **GRANTED**:

**I.  BACKGROUND**

Plaintiff, a former employee of CIGNA Corporation, was hired on January 12, 1987, as Director of Administration for CIGNA Health Plan, Inc. (hereinafter "CHP").  As a CHP employee, Plaintiff was eligible, upon his date of hire, to participate in CHP's pension plan (hereinafter the "CHP Plan").  Under the CHP Plan, Plaintiff accrued a one percent (1%) benefit of his final average eligible earnings for employment services rendered prior to December 31, 1988.

Case 8:04-cv-00851-JSM-EAJ   Document 96   Filed 01/24/06   Page 2 of 11 PageID 1125

In 1991, CHP merged with CIGNA, resulting in the merger of the CHP Plan into the CIGNA Plan[1] (hereinafter "the new CIGNA Plan"). The plan merger became effective January 1, 1991. Prior to the merger, the Board of Directors for both CHP and CIGNA, in anticipation of the merger, began discussing changes to the CIGNA Plan. What resulted was the adoption of various Board resolutions. Specifically, in December 1988, the CHP Board adopted resolutions which approved the merger of CHP and CIGNA and created a one and two-thirds percent (1.67%) pension benefit for its employees. This new benefit was to become effective January 1, 1989. Additionally, prior to the adoption of the CHP Board Resolutions, the CIGNA Board adopted a resolution which created a new pension benefit schedule of one and two-thirds percent (1.67%) for employees who joined CIGNA after December 31, 1988.[2] The effect of these Board resolutions and whether they effectively amended the new CIGNA Plan is disputed by the parties.

On March 28, 1992, the Plan Administrator for the new CIGNA Plan sent to all employees a letter describing the terms of the new CIGNA Plan, specifically that the new CIGNA Plan provided benefits under two separate schedules. In the correspondence, the Plan Administrator referenced an enclosure identified as a benefits schedule that applied "to employees hired or rehired by most participating companies on or after January 1, 1989. . . and to employees of CIGNA Health Plan [CHP] . . . regardless of their employment date." A

---

[1] The terms of the CIGNA Plan at the time of the merger were governed by the 1983 Plan Document and various amendments to the same. The 1983 Plan provided for a two percent (2%) pension benefit for all CIGNA employees.

[2] The CIGNA Plan had a two percent (2%) pension benefit which continued to CIGNA employees who joined CIGNA prior to January 1, 1989.

Summary Plan Description (hereinafter "SPD") and an Addendum to the CIGNA Pension Plan for CIGNA Health Plan Employees accompanied the administrator's letter, and explained that CHP employees would receive a one percent (1%) benefit for "service before January 1, 1989," and a one and two-thirds percent (1.67%) benefit for service after December 31, 1988. Specifically, the SPD stated:

> The schedule described here applies to you only if you meet one or more of the following descriptions . . . You are an employee of a CIGNA Healthplan, Inc. Subsidiary. You are eligible to accrue benefits under this Plan beginning the later of January 1, 1989 . . . , or your date of hire if you were hired ***after January 1, 1989***.

(Dkt. 47, Ex. 11) (emphasis in original).

On December 31, 1994, a new Plan document for the new CIGNA Plan was adopted (hereinafter "the 1994 Plan"). The 1994 Plan memorialized certain changes to the new CIGNA Plan including amendments made to the plan and the adoption of a "new, separate benefit accrual formula" for "employees whose service commenced after December 31, 1988, and for certain other employees described in the plan." Specifically, the 1994 Plan classified those employees who commenced employment after December 31, 1988 as New Formula Participants.[3] New Formula Participants were eligible to receive normal retirement benefits equal to "one and two-thirds percent (1.67%) of the normal retirement benefits (hereinafter "1.67%" or "Second Tier 1.67% benefit schedule"). All other Plan Participants continued to

---

[3] New Formula Participants also included those individuals "who . . . [c]ommenced eligible service with any company in the CIGNA Health Plan Division before January 1, 1989, had no credited service before January 1, 1989, and became a Participant in [the new CIGNA] Plan as a result of the merger."

be eligible for the normal two percent (2%) retirement benefit (hereinafter "2%" or "First Tier 2% benefit schedule").

Plaintiff was terminated from his position on March 18, 2003, and thereafter became eligible to receive retirement benefits. After his termination, Plaintiff learned he was not eligible to participate in the First Tier 2% benefit schedule, but instead was eligible to participate in the Second Tier 1.67% benefit schedule. Plaintiff, thereafter, submitted a request to the Plan Administrator, Defendant Beltz, to receive the 2% pension benefit. Plaintiff's request, however, was denied due to his classification under the new CIGNA Plan as a New Formula Participant. Defendant Beltz also informed Plaintiff that he could not be reclassified, as were other former CHP employees, because Plaintiff's job function did not include making policy decisions for all of CIGNA Health Care.[4]

Unhappy with the Plan Administrator's decision, Plaintiff utilized CIGNA's Employment Dispute Resolution Program, *Speak Easy*, and filed a complaint challenging the Plan Administrator's decision not to include Plaintiff in the First Tier 2% benefit schedule. An investigation confirmed that Plaintiff was not similarly situated to the reclassified employees because his job functions did not include making policy decision for all of CIGNA Healthcare and thus he was not entitled to be reclassified.

---

[4] These reclassified CHP employees were employed as human resources managers, medical directors, and sales managers and made policy decisions for all of CIGNA Healthcare. As a result of their reclassification, these employees were entitled to the two percent (2%) pension benefit. Plaintiff was not included in this group (which included 150 former CHP employees) because his job responsibilities with CHP did not involve making policy decisions for all of CIGNA Healthcare.

Subsequently, Plaintiff filed this lawsuit alleging Defendants violated the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§1001 *et seq*. ("ERISA"). Specifically, Plaintiff alleged Defendants decreased, by Plan amendment, his accrued benefit in violation of 29 U.S.C. § 1054(g); failed to give proper notice of the plan amendment in violation of 29 U.S.C. § 1054(h); violated the terms of the Plan by refusing to classify Plaintiff as a Participant; and breached their fiduciary duty (Dkt. 34).

Defendants assert that Plaintiff was never entitled to the 2% pension benefits because under the terms of the new CIGNA Plan Plaintiff was a New Formula Participant and was only entitled to the 1.67% pension benefit. Defendants contend that Plaintiff was a New Formula Participant because he (1) commenced eligible service with a company in the CIGNA Healthplan Division before January 1, 1989; (2) had no credited service before January 1, 1989; and (3) became a participant in the CIGNA plan via the merger. In support of their argument, Defendants rely on the various Board Resolutions which, according to Defendants, amended the 1983 CIGNA Plan and created the 1.67% benefit for those employees who joined CIGNA after December 31, 1988.

Plaintiff argues that these Board Resolutions were ineffective in both amending the Plan and creating the 1.67% benefit because Defendants did not follow the proper procedure to adopt the resolution and amend the plan. According to Plaintiff, the resolutions were only proposals and did not become effective until the 1.67% language was adopted into formal plan language in 1994.

## II.  DISCUSSION

A.  **Summary Judgment Standard.**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A dispute about a material fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Id. at 251-52.

B.  **Legal Analysis.**

   *1.   The 1988 Board Resolutions effectively amended the 1983 Plan thereby creating the 1.67% pension benefit.*

Section 402(b)(3) of ERISA provides that all employee benefit plans must provide a procedure for amending a plan and a procedure for identifying the persons who have the authority to amend the plan. See Curtiss-Wright Corporation v. Schoonejongen, 514 U.S. 73, 78 (1995) (citing 26 U.S.C. 402(b)(3)).  The procedure, however, need not be detailed. Id. at 80.  All that Section 402(b)(3) requires is that an amendment procedure exist.  Article 13, Section 13.1 of CIGNA's 1983 Plan provides such a procedure and grants CIGNA the right to amend the plan.  Specifically, the 1983 Plan states in part "CIGNA Corporation reserves the right to amend the Plan at any time and from time to time, in whole or in part." (Dkt. 68,

Ex.2 at 11). Defendants argue that with this provision, CIGNA retained the right to amend its Plan in a manner consistent with corporate law principles. Defendants also assert in their Motion for Summary Judgment that the 1988 Board Resolutions of both the CHP and CIGNA Board of Directors effectively amended the new CIGNA Plan and created a 1.67% benefit for employees who joined CIGNA after January 1, 1989. Plaintiff, however, contends that the resolutions were not effective amendments to the new CIGNA Plan because the resolutions did not expressly state, 'the plan is amended by amendment number x." [5] In support of this position, Plaintiff cites Scott v. Administrative Committee of the Allstate Agents Pension Plan, 113 F.3d 1193 (11th Cir. 1997).[6] But, Plaintiff's reliance on Scott is misplaced. In the district court opinion, with which the 11th Circuit agreed, the district court determined that the board resolution could not "fairly or reasonably be regarded by its terms as an amendment to the Plan" because, *inter alia*, "the resolution [spoke] in terms of authorizing and directing the officers to amend the Plan, not that the Plan [was] 'hereby amended.'" See Scott v.

---

[5] Plaintiff also argues that the resolutions failed to effectively amend the new CIGNA Plan as the Board Resolutions and the 1988 Memo attached thereto set out a specific procedure by which an amendment to the new CIGNA Plan could be effected. According to Plaintiff, in order for the resolutions to effectively amend the plan, four things had to occur:"(1) board resolution to approve changes and authorize management to amend the plan document, (2) amendment of the plan document by management, (3) obtaining government approval or meet regulatory standards, and (4) ratification by the Board of the amended Plan document in 1989" (Dkt. 64 at 7). Plaintiff argues that Defendants only completed the first step and therefore failed to amend the new CIGNA Plan. This Court disagrees. The Resolutions, as adopted, clearly grant both the CHP and CIGNA officers the authority to take all actions necessary to effectuate the purposes of the resolutions; i.e., amend the Plan documents, and ensure the amendments either were approved by the government or complied with applicable laws and regulations (Dkt. 47, Ex. 5 at 3, Ex. 6). More important, there is nothing in the 1983 Plan which states that in order to effectuate an amendment, the four steps articulated by Plaintiff had to completed.

[6] While Plaintiff' relies on Scott, the 11th Circuit did not specifically address the issue of whether the resolution language constituted an amendment to the plan. Instead, the 11th Circuit agreed with the district court's finding that the resolution did not effectively amend the plan. See Scott, 113 F.3d at 1199.

Administrative Comm'ee of the Allstate Agents Pension Plan, 1995 WL 661096 at 7 (M.D. Fla. 1995). The Board Resolutions in the instant case, however, are very different than those in <u>Scott</u> and clearly articulate the intentions of both the CIGNA Board and the CHP Board to create a new pension benefit. Based on the record evidence, the following is the sequence of events which effectively amended the Plan:

> - **September 28, 1988 at 9:00am**: A joint meeting was held between the People Resources Committee and the Transition and Retirement Planning Committee. During this meeting, the proposed changes to the plan were discussed, namely the creation of a new pension benefit of 1.67% for those persons hired on or after January 1, 1989 (Dkt. 47, Ex. 4). At the conclusion of the meeting, the People Resources Committee recommended the proposed changes and further recommended the adoption of the necessary resolutions to the Board at its meeting later in the day. <u>Id.</u>
> - **September 28, 1988 at 11:00am**: A meeting was held of the Board of Directors of CIGNA Corporation (Dkt. 47, Ex. 5). During the meeting, a resolution was adopted that "the changes to the [CIGNA Plan], as amended, to be effective January 1, 1989, as recommended by the People Resources Committee . . .are hereby approved." <u>Id.</u>
>
> - **December 19, 1988**: A meeting was held of the Board of Directors of CHP (Dkt. 47, Ex. 6). During this meeting, the Board adopted many resolutions, one of which read "[t]he Pension Plan of CIGNA Healthplan, Inc. . . . be amended and restated effective January 1, 1989, to provide that . . . Pension benefits will accrue at the rate of 1[.67]%. " <u>Id.</u>

Based on the clear language of both resolutions, the Court finds the CHP and CIGNA Plans were effectively amended and created a benefit level of 1.67% for employees who joined CIGNA after January 1, 1989.

Plaintiff also argues that the Boards' resolutions had no effect on the benefit rate until 1994 when the resolutions were restated in the 1994 Plan. According to Plaintiff, the resolutions were merely recommendations to the Board rather than amendments to the Plan. In support of this argument, Plaintiff relies on ERISA § 402(a)(1), which states that ERISA

plans must be established and maintained pursuant to a written instrument. The written instrument, according to Plaintiff, setting forth the benefits to which Plaintiff was entitled, was the 1983 Plan Documents and its amendments. As none of these documents contained a 1.67% benefit schedule, Plaintiff argues that the absence of the tier in the 1983 Plan document itself and Defendants' failure to incorporate said benefit in a formal amendment evidences that the 1.67% benefit did not become effective prior to 1994. This Court disagrees. As stated above, the 1988 Board resolutions effectively amended the 1983 Plan. The absence of a formal plan document memorializing the addition of the 1.67% benefit schedule does not negate that the plan was amended. Moreover, subsequent to the approval and adoption of the resolutions, Defendants distributed SPDs which explained the new benefit tier and identified those persons eligibly to participate in the Second Tier 1.67% benefit schedule.

   *2.     ERISA Standard of Review.*

To determine whether a reasonable jury could return a verdict for the non-movant, this Court must determine which standard of review to use in examining Defendant's denial of Plaintiff's participation in the First Tier 2% benefit schedule. There are three standards of review appropriate in ERISA decisions. See Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 109 S. Ct. 948, 103 L.Ed. 2d 80 (1989) (comparing ERISA law to trust law and adapting the standards of review from trust law to fit ERISA cases). First, where an ERISA plan does not grant the plan administrator discretion to determine eligibility for benefits or to construe the terms of the plan, the Court will apply a *de novo* standard of review. See Williams v. BellSouth Telecommunications, Inc., 373 F.3d 1132, 1135 (11th Cir. 2004); see also Marecek

v. BellSouth Telecommunications, Inc., 49 F.3d 702, 705 (11th Cir. 1995). Second, when the plan does grant the plan administrator such discretion, the "arbitrary and capricious" standard applies. See Williams, 373 F.3d at 1135. This standard affords the plan administrator the most deference, allowing for a reversal of the decision only if no "reasonable" grounds exist to support the plan administrator's decision. See id. at 1137-1138. However, the examination of the reasonableness of the Plan Administrator's decision only occurs if the Court determines *de novo* that the Plan Administrator's decision was "wrong." Id. at 1138. If the Court does not determine that the decision was "wrong", i.e., the Court agrees with the Plan Administrator's decision, the analysis stops there and the decision should be affirmed. Id. Finally, if the plan grants the fiduciary or administrator discretion, but the Court finds a conflict of interest between the administrator and the company, a "heightened arbitrary and capricious" standard applies, and the Court will consider this conflict in its analysis. See Brown v. Blue Cross & Blue Shield of Alabama, Inc., 898 F.2d 1556, 1566 (11th Cir. 1990). As Plaintiff has conceded the use of the arbitrary and capricious standard for purposes of reviewing the Plan Administrator's decision (Dkt. 87 at 4), this Court will not address any of the other standards of review in this Order.

In the instant case, Plaintiff argues that Defendant Beltz's decision to deny Plaintiff's participation in the First Tier 2% benefit schedule was arbitrary and capricious because the decision violated the plain language of the Plan (Dkt. 87). This Court disagrees. As detailed above, Plaintiff clearly met the definition of New Formula Participant as described in the Board resolutions and memorialized in the 1994 Plan and thus was only entitled to participate

in the Second Tier 1.67% benefit schedule. In making his determination, Defendant Beltz, as Plan Administrator, relied upon the clear language in the 1994 Plan and correctly interpreted the definition of New Formula Participant to include Plaintiff. It is this Court's opinion that Defendant Beltz's decision was correct. Having determined the decision was correct, the Court's analysis need go no further.

### III.  CONCLUSION

Based on a review of the record, there are no material issues of fact for the jury to consider. As such, it is ORDERED AND ADJUDGED that:

1. Defendants' Motion for Summary Judgment in Part and to Dismiss in Part (Dkt. 48) is **GRANTED**.

2. Plaintiff's Dispositive Cross Motion for Summary Judgement on His Third Claim for Relief (Dkt. 87) is **DENIED**.

3. All pending motions, if any, are denied as moot. Clerk is directed to CLOSE this file.

**DONE** and **ORDERED** in Tampa, Florida on January 24, 2006.

*[signature]*

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Odd\2004\04-cv-851.msj.frm